Palmer vs. Banfield.

=====

PALMER, Respondent, vs. BANFIELD, Appellant.

*November 10 — November 28, 1893.*

*Sale of chattels: Acceptance: Waiver of right to return: Who may maintain action? Instructions to jury.*

1. Where the vendee of a harvesting machine had the right to return it, either because of defects constituting a breach of warranty or under a condition of the sale that he might return it if dissatisfied, but, after testing it and discovering the defects or determining that he was not satisfied and would return it, he continued to use it, not to make a further test but merely for the purpose of completing his harvest, such use was an acceptance of the machine and the right to return it was thereby lost.

2. Plaintiff was the agent of manufacturers under a contract providing that if he made sales of their machines on terms other than those specified he should be charged as purchaser thereof. He sold a machine to defendant on other terms, was charged as purchaser,

Palmer vs. Banfield.

and paid the manufacturers therefor. *Held*, that he thereby became the owner of the cause of action against defendant for the price of the machine.

3. A refusal to instruct the jury that they might find damages for defendant in case they found in his favor is not a ground for reversal where the verdict was for plaintiff.

APPEAL from the Circuit Court for *Grant* County.

This action is to recover the price of a reaper and harvester alleged to have been sold and delivered by plaintiff to defendant in August, 1892, for the agreed price of $110. The complaint states the contract to have been that defendant should on demand give plaintiff for the price of the machine his two promissory notes for $55 each,— one payable in one year, and the other in two years, from the date of sale, with interest. It is further alleged in the complaint that defendant took, used, and accepted the machine, and that on due demand by plaintiff, made before the action was commenced, that defendant execute such notes, the latter refused to do so.

In his answer defendant denies that the parties made the agreement alleged in the complaint, and avers that the only agreement made in respect to the machine (which is referred to in the answer as a harvester and binder) was as follows: "The defendant was to take and did take said binder to try and use in his harvesting for the years 1892 and 1893, and that, if said harvester and binder did the work satisfactorily to this defendant during said two harvests, then in that event said defendant was to pay said plaintiff the sum of $55 after the harvest of 1893, and the further sum of $55 in the fall of 1894, and not otherwise." The answer further alleges that on a fair trial of the machine it failed to work satisfactorily to defendant, and failed to do good work, whereupon he immediately returned it to plaintiff. The answer also contains a counterclaim for $25 damages for " trouble and expense by reason

of said harvester and binder failing to work satisfactorily to the defendant."

The cause was tried before the court and jury. The testimony of plaintiff tends to prove the allegations of the complaint, and that of defendant tends to prove the allegations of the answer. It appears by the testimony that the machine was delivered to defendant on a certain Thursday afternoon, and was immediately put to work and developed some defects in its construction. That defendant used it through Friday and discovered other defects going to the capacity of the machine and the principle upon which it was constructed. The testimony tends strongly to show, if it does not prove conclusively, that as early as Friday defendant had discovered all the defects in the machine, was dissatisfied with it, and had decided to return it. However, he used the machine nearly all day on Saturday and until he had finished cutting his grain, and then sent it to Cuba City, one and one-half miles distant, where plaintiff had a place of business, and it was left on a vacant lot formerly occupied by plaintiff. The plaintiff never accepted return of the machine, and has had nothing to do with it since such attempt to return it.

The court refused to give the following instructions proposed on behalf of defendant: "(1) When machinery is guaranteed to do certain work in a satisfactory manner, and not to be paid for until satisfactory to the purchaser, if it is in good faith unsatisfactory to him, and he notifies the vendor of that fact within a reasonable time, there is no sale. (2) If you find that the contract was that the binder was to do work to the satisfaction of the defendant, and that the defendant made an honest effort to make said binder do good work, and if the defendant within a reasonable time returned the binder to plaintiff because he was in good faith dissatisfied with the binder, then your verdict shall be in favor of the defendant. (3) If the jury find in

favor of the defendant, they may also find such damages, if any, that he may have suffered by reason of the failure of the binder to do the work agreed that it would do by the contract."

The court submitted it to the jury to find what the con-tract of the parties was, and instructed the jury substan-tially that if they found it to be as alleged by the plaintiff there was an implied warranty that the machine was suitable for the work it was intended to do, and if not suitable there-for defendant had the right to return it to plaintiff within a reasonable time after discovering its defects. But the court further instructed the jury, if they found that defend-ant, after " he knew or ought to have known from the test he made that this machine was an unsatisfactory machine on Thursday or Friday, and after determining that he was not satisfied with it, nevertheless went on and worked with it on Saturday for the purpose of completing his harvest, the law would consider that an acceptance of the machine." Also that such acceptance would foreclose defendant's right to return it, and render him liable to pay therefor the agreed price. The court further instructed the jury that, if they found defendant's version of the contract the cor-rect one, he had the right to return the machine if not satisfied with it, unless he had theretofore accepted it under the rule of acceptance above stated; and, if he did thus accept it, the right to return it was lost.

The jury found for plaintiff and assessed his damages at $110 (that being the admitted contract price of the ma-chine) and interest thereon from the commencement of the action. A motion by defendant for a new trial was denied, and judgment entered for plaintiff pursuant to the verdict. Defendant appeals from the judgment.

*T. L. Cleary*, for the appellant, to the point that the first instruction asked and refused should have been given, cited *Exhaust V. Co. v. C., M. & St. P. R. Co.* 66 Wis. 218;

*Silsby Mfg. Co. v. Chico,* 24 Fed. Rep. 893; *Manny v. Glendinning,* 15 Wis. 50.

For the respondent there was a brief by *Carter & Burns,* and oral argument by *W. E. Carter.* To the point that the instruction as to an acceptance of the machine by defendant was correct, they cited Benj. Sales, secs. 595, 703–4, and cases cited; *Fairfield v. Madison Mfg. Co.* 38 Wis. 350; *Exhaust V. Co. v. C., M. & St. P. R. Co.* 66 id. 218; 21 Am. & Eng. Ency. of Law, 557–559, and cases cited in note 1 on p. 559.

LYON, C. J. 1. There is no claim in this case for damages for a breach of warranty, either express or implied, on the sale of the reaper and harvester in controversy. The question of warranty is, therefore, of no significance in the case, except as it bears upon the right of defendant to return the machine in case the sale thereof was absolute, as claimed by plaintiff. If the jury found the contract to be as claimed by defendant, under the charge of the court the question of warranty does not necessarily arise, for the jury were instructed that, if they so found, the defendant had a right to return the machine if not satisfied with it, although it may have done such work as would satisfy men generally. The right under such a contract to return the property may be stated a little too broadly in the instructions; but no exception was taken thereto, and it stands as the law of this case. Certainly the rule thus stated allowed the defendant to be dissatisfied with and to return the machine, even though there was no breach of any warranty in respect thereto, either express or implied. Neither is there any controverted question of reasonable time in which to return the machine involved in the case. If the defendant did not, by his use of the machine, destroy the right to return it, if otherwise he had such right, it must be held as matter of law that he returned it, or rather that

he effectually offered to return it (which amounts to the same thing), within a reasonable time after it came to his possession.  So the question is not whether the offer to return was made within a reasonable time, but whether the defendant had any right to return the machine when he attempted to do so.

If the sale was absolute, as claimed by plaintiff, and there was a breach of an express or implied warranty of the machine, and if defendant accepted the machine after testing it and discovering its defects; or if the sale was upon condition that if dissatisfied with the machine the defendant might return it, and if defendant, after testing it, fully determined that it was unsatisfactory to him and he would return it, and afterwards accepted it,— in either case the right to return it was lost.  The court instructed the jury that, if defendant ascertained on Thursday or Friday that the machine did not do good work, in the one case; or, in the other case, that he then determined he would return it as unsatisfactory,— if he used it on Saturday, not to test it further, but merely to complete the cutting of his grain and without any expectation that plaintiff or his agent would come there and make the machine satisfactory to him, such use was an acceptance of the machine as a compliance with the contract, and was fatal to his right to return it.  We think the court stated the law correctly, and that the testimony justified the submission to the jury of the question of acceptance.

It should be stated that when plaintiff took the machine to defendant he had with him an expert, who assisted in starting it.  There is testimony to the effect that, without plaintiff's knowledge, such expert told defendant's son he would return on Friday and see how the machine worked; but he made no promise to go there on Saturday.  Plaintiff informed defendant that he would remain at Cuba City (his home being in Galena) until Saturday, where he could

be notified if the machine did not work right. He remained there until Saturday afternoon, but received no such notice. It is very doubtful whether the expert had authority to bind plaintiff by his promise to return on Friday, the plaintiff being present, acting for himself, although not in hearing at the time. But, waiving that question, the jury might well find from the testimony that defendant had no right to expect, and did not expect, that either plaintiff or the expert would return to defendant's farm on Friday, or at any other time, or that either of them intended or promised to have anything further to do with the machine, unless notified that it did not work well.

2. It results from what is said above that the first and second instructions proposed by defendant are defective, in that they ignore the question of acceptance. They should have been qualified by adding to each a clause to the effect that if defendant accepted the machine in the manner above stated,— that is, by using it to finish his harvest after he had tested it and found that it would not do good work, or he determined that it was unsatisfactory and he would return it,— his right to return it was lost; and the question whether he did so return or offer to return it, or notify plaintiff of his dissatisfaction therewith, within a reasonable time, would be thereby eliminated from the case. The third proposed instruction goes expressly upon the hypothesis that the defendant obtain a verdict. The verdict being for plaintiff, the instruction becomes inapplicable to the case.

3. On the trial the question was raised whether plaintiff owned the cause of action for the price of the machine. It was proved that he was the agent of the manufacturers for the sale thereof and other like machines, under a contract prescribing the terms on which alone sales should be made by him, and providing that if sales were made on other terms plaintiff should be charged with the machines thus

*Palmer vs. Banfield.*

sold as a purchaser.  The sale of the machine in question was not made in accordance with such prescribed terms, and before this action was commenced it was charged to the plaintiff as a purchaser and he paid the manufacturer therefor.  Of course, he thus became the owner of the cause of action for the price of the machine.

4.  Among the several errors assigned, one is as follows: " The court erred in conveying to the said jury his opinions on the merits of the case by the manner in which he commented on the case and formulated his instructions to the jury."  The learned counsel for defendant stated in his argument that this is the main error on which he relies for a reversal of the judgment, and he explained in a very interesting manner how an honest judge may be unconsciously betrayed into actions and expressions in the presence of the jury very prejudicial to the cause of one or the other of the parties.  And so, while paying a high and well-deserved tribute to the integrity, ability, and desire to do exact justice in all cases of the judge who presided at the trial, he argued that this is a case of unconscious bias on the part of the judge against the case of the defendant, and sought to prove its existence from the record.  It is almost, if not entirely, inevitable that he should fail.  This court can only know from the record what the judge said and did on the trial.  It is sufficient to say that the most searching scrutiny of the record not only fails to disclose the existence of any such bias, but it fails to raise even a suspicion of its existence.  We find neither error nor impropriety in any of the remarks of the judge on the trial which are referred to by counsel in support of his position.  Neither do we find any error in the rulings of the court on the trial, or in the charge to the jury.

*By the Court.*— The judgment of the circuit court is affirmed.