Svoboda v. Barta, 169 Wis. 338.

SVOBODA, Respondent, vs. BARTA, Appellant.

*April 29—May 27, 1919.*

*Sales: Provision for acceptance of article sold by retention for one day: Waiver: Question for jury.*

1. A provision in a written warranty that a tractor sold by defendant to plaintiff might be tested for one day and that retention thereafter should constitute an acceptance, is *held* waived by the vendor in view of the conduct of the parties.
2. Under sec. 1684t—48, Stats., as to acceptance of goods by retention for longer than a reasonable time, retention of the tractor for nearly a year after delivery is not, as a matter of law, a retention amounting to acceptance, in view of evidence that opportunities for testing were limited and that the buyer was being urged by the seller to give the tractor a further trial upon the assurance that it would be made to work.

APPEAL from a judgment of the circuit court for Kewaunee county: W. B. QUINLAN, Judge. *Affirmed.*

Action to recover the purchase price of a tractor, upon rescission for breach of warranty. On the 25th day of September, 1916, plaintiff purchased of defendant, an implement dealer, a Moline Universal tractor. It was warranted to work equal to any other first-class machine made for doing the same work, if not better, under proper management. It was agreed that the purchaser should have the use of the machine for one day on trial, and in case anything proved defective due notice should be given to the seller or his agent and time allowed to send a person to put it in order, after which, if it did not work and the fault was in the machine, it would be taken back or the defective parts replaced or the money or notes given in payment refunded. It was also provided that further use would be considered an acceptance of the machine by the purchaser.

· The tractor was delivered on plaintiff's farm on the 28th or 29th of September. Defendant went out the next morning to start it. A stone broke the gearing. It was fixed by noon, or a little after, and *Barta* tried it out in the afternoon. According to plaintiff's testimony he did not use the tractor on the succeeding day, but did attempt to plow with it on the following day and he could not operate it. *Barta* came up and found one of the nuts from one of the gears was gone. He took it to town and did not return it for more than a week. When returned, another trial was made. *Svoboda* attempted to plow with it the next day, but after plowing about two hours the engine stopped working. He again had *Barta* come out to look it over, and the shifting lever was found to be broken. It took a week to have this repaired. It was fixed in the forenoon and plowed all right in the afternoon. It worked about two or three hours the next day and then the engine stopped again. *Svoboda* told *Barta* he must fix it so it works or take it back. *Barta* said he would come and fix it and that it would have to work.

It was then concluded to install a new engine on the tractor, which took until about Christmas. It was then started, and they attempted to cut feed with it. While they were operating it a shaft that runs water around the cylinder broke, which had to be taken to town to be repaired. After cutting the feed *Barta* asked *Svoboda* if he was satisfied now, and he said "No;" the machine was guaranteed to plow and this is no trial. *Barta* reassured him that the machine was guaranteed to do all of his plowing on his whole field and told him to keep it until the tractor had plowed his whole farm. He said he guaranteed the machine to plow everything he had to plow. The tractor was not used again until spring, when he did some harrowing with it, but it did not work satisfactorily. The same shaft broke again. He used it for harrowing for three or four days in May, for three or four hours each day. It did not work well. It did not feed the gasoline right. It smoked too much and made a lot of noise and got hot. *Barta* was there a couple of days, looked it over, cleaned the carburetor and adjusted the governors. No attempt was made to use it thereafter, until the latter part of July, when another attempt was made to plow with it. He tried it about eight hours, a couple of days, the latter part of July and August. It did not seem to have power. It was not strong enough to pull the plow. It heated up badly. *Svoboda* went to *Barta* and said he must fix the machine or he would return it. *Barta* said, keep the machine; he will fix it; that it will work, and that it has got to work. *Barta* came to look it over, tried to start it, but failed. He said he would get a man to come from the company to fix it. The matter ran along for two or three weeks, no man came, and *Svoboda* returned the tractor and brought this action to recover the purchase price. The following special verdict was returned by the jury:

"(1) Did the tractor delivered to the plaintiff, *John Svoboda,* on or about the 29th of September, 1916, comply, on

or about said 29th day of September, 1916, with the written warranty given by the defendant, *Joseph M. Barta,* to the plaintiff, *John Svoboda? A.* No.

"(2) If you answer the first question 'No,' then answer this: Did the tractor at any time subsequent to on or about the 29th of September, 1916, comply with the written warranty given by the defendant, *Joseph M. Barta,* to the plaintiff, *John Svoboda? A.* No.

"(3) Did the plaintiff, *John. Svoboda,* at any time between on or about September 28 or 29, 1916, and the first part of October, 1917, accept the tractor? *A.* No.

"(4) Did the plaintiff, *John Svoboda,* when operating said tractor, follow the instructions and properly oil, operate, and manage said tractor? *A.* Yes.

"(5) Did the defendant, *Joseph Barta,* induce the plaintiff, *John Svoboda,* to retain the tractor for further trial up to the time that the plaintiff, *John Svoboda,* offered to return the tractor? *A.* Yes.

"(6) Did the plaintiff, *John Svoboda,* retain the said tractor in his possession an unreasonable length of time for the purpose of the trial after he found the same to be unsatisfactory? *A.* No."

Upon the special verdict judgment was entered in favor of. the plaintiff and against the defendant, from which judgment the defendant appealed.

*Joshua L. Johns* of Algoma, for the appellant.

For the respondent there was a brief by *Bruemmer & Bruemmer* of Kewaunee, and oral argument by *Otto H. Bruemmer.*

OWEN, J.    Appellant contends that the verdict is not supported by the evidence.    This contention was rejected by the trial court.    An examination of the record convinces us that the verdict is supported by ample testimony.    No more need be said upon the question.

It is further contended that the retention of the engine by respondent for nearly a year after its delivery amounted to

an acceptance thereof, and that the right of rescission had been waived.    Sec. 1684t—48, Stats., provides that

"The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them."

This is but a legislative embodiment of a rule firmly established by the decisions of this court.    *J. L. Owens Co. v. Whitcomb,* 165 Wis. 92, 160 N. W. 161, and cases there cited.    In that case it was held that the use of a machine for a length of time unnecessary for any reasonable test to be made thereof must be considered an acceptance.    While in this case the written warranty provided that the tractor might be used for one day for the purpose of testing it, and that retention thereafter should constitute an acceptance, it is clear from all the testimony in the case, as well as the conduct of the parties, that this provision was waived by the vendor, and, in fact, it is not contended that an acceptance resulted by reason of this provision in the warranty.    The contention is rather based upon the broad general principle that the tractor was retained by respondent for an unreasonable length of time, in view of all the facts and circumstances of the case.    Respondent's testimony, a *résumé* of which is set forth in the statement of facts, very strongly indicates that at no time did the tractor work to that degree of efficiency which he had a right to expect.    The evidence on behalf of the respondent indicates, too, that the tractor never did a satisfactory day's work, especially when it was used for plowing, and that it was giving almost continual trouble is fairly deducible from the evidence of appellant himself. The only opportunity for plowing with the tractor was in the fall of 1916, and very soon after the delivery thereof appellant concluded to replace the engine.    Obviously this conclusion was prompted by the fact that the engine did not work

satisfactorily.   Respondent's testimony indicates that he did not get one good day's work out of the tractor during the fall of 1916.   Of course there was no opportunity to test it out in plowing during the winter.   It was used only for harrowing purposes during the spring, the first occasion for plowing being the first of July.

The evidence is sufficient to justify the conclusion that the tractor did not work well in harrowing and that it utterly failed to work satisfactorily in plowing.   It will thus be seen that, while the respondent retained the engine in his possession for upwards of a year, opportunities for testing the tractor were limited; that no test proved satisfactory; and that during all that time he was urged to retain the tractor and to give it further trial, upon the assurance that it would be made to work.   We cannot say as a matter of law that the retention, under the circumstances, amounted to an acceptance.   On the other hand, the evidence justifies the finding of the jury that there was no acceptance.

It is unnecessary to discuss in detail further contentions made by appellant.   They were all covered by the special verdict of the jury, which we find is supported by the evidence in the case.   It follows that the judgment should be affirmed.

*By the Court.*—Judgment affirmed.